Thank you. May it please the court. My name is Bron Rammel from Pocatello, Idaho. I represent Sherman Anderson, who is the plaintiff appellant, who, if you accept his version of the facts as true, was fired as a result of a false positive drug test administered by Thompson Creek Mining Company, which they should have known or reasonably should have known was I understand. So what am I supposed to do with that? Well, yeah, I think that the way I did try to deal with this on appeal is this. The lower court made a factual determination that should be left to the jury when it held that the act did not apply because Thompson Creek received unemployment benefits and failed to properly comply with the act. In other words, the district court concluded that they elected to forego the benefits of the act. Necessarily then, the court made a factual determination, which would incorporate this concept, that Thompson Creek did not know that the test was false. Well, Counselor, I guess I'm back where my colleague is. It seemed to me that the only thing the district court did is the district court said, you don't have to comply with the act, and because you don't have to comply with the act, then there's no way to bring a cause of action for failure to comply. So you can bring your cause of action and the employer, who doesn't get the benefit of having complied with the act, doesn't get to use the act as an affirmative defense to get out from under it, but you can't bring the cause of action for failure to comply. In other words, you can bring your cause of action, but the act has nothing to do with it, and the employer cannot bring the act as an affirmative defense to get out from under your cause of action. That's what I think the district court said. That's not the way I read what the district court said. Well, I guess I'm having a tough time understanding why it doesn't say that. He said, as a matter of law, compliance with the act is voluntary. You don't have a right to maintain a cause of action for not complying with it, and therefore, guess what? If you want to get some unemployment benefits or whatever you're going to get, or whatever you can get outside of the act, they can't use the act as an affirmative defense. The lower court did not view it as an affirmative defense type of a situation. Well, I don't know how you could read it. What he says is, compliance with the act is voluntary. Compliance reaps benefits. Without compliance, the employer must show that he's entitled to at that point, he has no affirmative defense. He's only got a common law remedy. The problem with that is there are no common law remedies. Because an employer, for example, owes no duty to an employee to properly conduct a drug test. So what you're saying is, which is where I want to lead you a little bit, if we don't have any act to comply with, then we're back to the common law, which is your employee that you represent is, under Idaho law, nothing more than an at-will employee who can be fired for anything, unless there are exceptions outlined under the common law, which I didn't find any exceptions either. So, of course, it was a brilliant and resourceful brawn who's trying to make an exception with the act. But, again, I'm having a tough time understanding why the act applies. Because the act itself says that it applies. Well, it does not. It says it's voluntary. It says that it's voluntary, but once, and that's where the factual question comes in, because it may be voluntary, but once a person voluntarily elects to participate in a process, then they must be bound by that voluntary process. Yeah, of course, they're bound to the degree that it's voluntary, but what does bound mean? I mean, I'm following through the process, but what are the consequences? I don't see in the statute that says, well, the consequences for not following through precisely is that all of a But I think it does, Your Honor. For example, 17-111 provides specifically for a cause of action. To read it the way that the district court read it and the way that this court suggests, or the way that Your Honor suggests, would mean that that language was meaningless. But that's the cause of action you now want to point to, but that's not the cause of action you presented to the district court. And if you're going to, on summary judgment, not a complaint, but on summary judgment, where everybody's put all their evidence in it, this is what I'm going to show. You're now arguing that they knew it was false, and therefore I got a cause of action under 17-11. That's a different case. I don't think it was a different case. For example, you can look at the excerpt of the record at 9-009, which is the memorandum in response to the motion for summary judgment, where the defendant understood full well that we were discussing and addressing 17-11 by stating, in this case, based on a plain reading of the act, plaintiff may only file a cause of action against TCM under 72-1711 if the drug test by psychomedics produced a false result. But Mr. Rowell, you added the argument under section 72-1711 on the motion to reconsider and a motion to amend. And you lost. And you didn't appeal. I think, Judge, that it still gets back to you. I mean, if you don't appeal the motion to amend, you don't appeal the award of attorney's fees, I can't go there. So there, I mean, all of those good arguments you may make, he denied, and you didn't appeal. Well, from my perspective, the viewpoint was that the court made a factual determination first that affected its ultimate decision on how it applied the statute. I understand what this court is saying, and I get it. But the problem is that before the district court could get to that level, it wasn't allowed to make that factual determination, and from my perspective, that there was of what Thompson Creek Mining Company elected to do. And that's the problem. We don't get to the point that this court is talking about in terms of other things that the statute does when the district court first starts with the prospect, and what he relies on is the conclusion that Thompson Creek Mining elected and chose to engage in certain things. For example, the district court states that they elected not to comply with the act. That's not true, and it's a factual issue. Let me ask you a second point. Did your client receive unemployment benefits? He did, but the increase from that... If I read 72-1706, the act establishes a voluntary guideline. When complied with, we'll find an employee who tests positive at fault and will constitute misconduct as provided, thus resulting in the denial of the unemployment benefits. So therefore, under 72-1706, if you got anything, you got what it suggests you're going to get, the benefits which you wouldn't have got otherwise. But that's only one part of it, your honor. 1706 subsection 2 also requires that if he retests, and the retest is determined to be negative, that the employee shall be reinstated with back pay. Those two things can't be read consistent with each other if we're going to say that the act means nothing, and so it has to. It has to mean something, and the real dispute here, your honors, is that the inferences that the court reaches off of the statute are all in favor of the defendant, not in favor of the plaintiff or the appellant. For example, let's say that... I don't think the court has reached inferences at this point. And here's why judges are just giving you questions. I understand. I think that the problem that I have with that is that the district court said that the reason the statute didn't apply was because of Thompson Creek Mining's choices. Well, choice, or what the inference is off of those choices, would be a question for a jury. What did they intend to do? Did they intend to be bound by the act? What, for example, as Judge Smith asked, did the plaintiff receive the unemployment benefits? Yes, but that doesn't mean you know full well that an employer cannot challenge unemployment benefits for a multitude of reasons. Not simply because it intends to not be bound by the act, but that's the court held. Okay, counsel, let me just give you my one question that has me hung up. How can a private implied cause of action arise from an act that's voluntary? The voluntary component begins at the time that the company elects to participate in the program. Perhaps the greatest benefit that an employer receives by the statute is that they're now allowed to test an employee without reasonable cause. I suppose that means probable cause. As a result of that, at that point, the employer is now into the act. In other words, that voluntary choice has been made, and it has passed. Do you have any case that holds, I guess, in your state that that's true? That once someone ventures down the path of following this statute, it becomes mandatory? Not necessarily in terms of a specific statute, but as a matter of common law, once any individual undertakes an act, whether it's by statute or otherwise, they have to perform that act in accordance with the statute. In effect, Mr. Rommel, I think you have to explain, Judge Gould, this question is good. Desilet versus Glass Doctor. I'm sorry? D-E-S-I-L-E-T. I say that desilet. It might be desilet. I don't know. I'm an Idaho boy, so I don't know how to say it. He's saying, do you have a case on point that helps you? You got a case on point that doesn't help you. I had felt like that that case was distinguishable and not applicable. Once again, I had felt, and perhaps incorrectly so, if the court feels to the contrary, but I had felt that it is pretty fundamental jurisprudence that once a person undertakes an act, once they opt into the benefits of a program, that they then are bound by that. I don't see any case to the Hotel California principle. You can check in any time you want, but you can never leave. Once you check in, you're bound by the terms of the contract. That is what I believe happened here. I recognize that the statute creates some conundrums. The voluntary language, however, my focus would be that when you come to the voluntary language, that decision was made once they elected to participate in the program. I think we've got it. Yeah, I know you do. 30 seconds. Let's hear from the other side, and then you've got some time. May it please the court, counsel. My name is Tricia Olson of Moffitt Thomas Barrett Rock and Fields. I'm here representing the defendant, Thompson Creek Mining Company. I don't know whether it's relevant. Currently, the mine is, quote, mothballed and not in operation, but still in existence, so all the corporate statements made in our briefs are accurate. My argument, basically, is that which I've heard all of you judges question Mr. Rammel about. It is undisputed that Thompson Creek Mining Company was a private employer, that Anderson was an at-will employee, that when he was hired, Mr. Anderson consented to Thompson Creek's drug testing policy, and this policy provided for post-offer drug testing and then random testing. There's no requirement that under any law, constitutional or whatever, that private employers have to have probable cause for drug testing. They can set forth the terms of their employment however they want to, and if the employee agrees to it by taking the pay, they take the pay. There's no dispute that on 12-1609, the selection of Anderson and several other employees was random, and I mention that because the second count of the complaint that was before the district court, and therefore before this court, implies somehow that the selection of Mr. Anderson was discriminatory because he was going to be entitled to some retirement pay in about 33 days, and the fact is there's no evidence that his selection that day was discriminatory, that it was anything but random. There is no dispute in the record that the employee who took the hair samples from all the randomly selected employees on 12-16 was certified and had been trained and was certified by psych medics. There is no dispute that psych medics is a well-reputed drug testing company. There is no dispute that the psych medics initial screening was positive for the presence of THC, and there's no dispute that the only gold standard test, which was done, was done by psych medics on that sample taken 12-16, and they used gas chromatography mass spectrometry, here and after referred to as GCMS. I don't think this is necessarily going to make your client lose. The one thing about this case that upsets me or bothers me a little bit is that upon retesting, he gets an initial result of no drug and then the sample is used up so they can't continue the testing. That at least puts a doubt in my mind as to whether the initial test was right. Well, your honor, the screening test that hair that was taken on January, excuse me, February, no, it's January 6th of 2010. The problem was there wasn't enough left of Mr. Anderson's hair taken 12-16. He had the only hair on his head, meaning he can come back in and say here's some hair. Oh yeah, he did, but the idea is to use the same hair taken 12-16, particularly when you're dealing with metabolites which leave the body after a certain point in time. Now, I may be up against the limitations of my knowledge. This happens a lot, but my sense is that the reason you test hair is that in the hair there is preserved evidence of prior drug use. So you test hair rather than blood because it comes out of the blood pretty fast, but it sticks around in the hair. Now, is that right? Is that how that works? Yes, sir. So why can't they take another snip of his hair that should have produced exactly the same thing as the first snip of the hair because it's in the hair. It's not something that sort of disappears once the kidneys have sort of Right. Well, I'm misunderstanding something about the test. No, your honor. I don't think it's in the record before this court, but the THC will last in the hair for about 30 days. So if he had smoked pot on November 16th, it could have been there on 12-16 and gone on January 6th. He found out about it on 12-28-09 and didn't have the test done until 1-6. But the point is, when he had that test done on that second bit of hair that was taken on 1-6, the initial screening test came back as negative for the presence of THC. But that sample of hair taken by Chalice Medical Center, there wasn't enough left of that sample of hair to do the further testing, the MSGC. I'm not sure this is legally relevant because the legal question in front of us is whether this is voluntary. Yeah. And if the argument is, well, they knew or should have known, and that's sort of the failure of the second testing round. If that's the argument, I'm afraid that that's a different problem for him because I'm not sure it's properly in front of the district court and therefore in front of us. Yes, Your Honor. I would submit the 17-11 argument you refer to as not properly before the court. And as Judge Smith said, this statute is voluntary. It says so in 17-17-01, Prenn's 1. This act establishes voluntary drug and alcohol testing guidelines. And I think what's important to realize here is there's no dispute that the employer wanted to keep Anderson. His boss liked him. He was a good employee. But what they were faced with was there wasn't enough left of his sample that they had and the confirmatory MSG test. There was not enough of the hair that Mr. Anderson had taken at the Chalice Clinic to do the second confirmatory test, or so it's not in the record. And I don't know whether that's a function of Mr. Anderson's hair or whatever. I mean, who knows? That's total speculation. And there's no dispute that Thompson Creek did try to get a second sample from Mr. Anderson when he asked for it, and there wasn't enough left. There's no dispute that there is no evidence in the record that the Chalice Clinic failed to take enough hair. And there's no dispute that Thompson Creek Mining Company realized that, okay, it had not complied with the full letter of the act, and therefore it could not avail itself of the benefits of the act. However, it did have one gold standard MSGC test that showed him positive for THC. Well, but the court question in front of us is where you started, and that is, Judge Wynne will get it right, that this is a voluntary statute. It doesn't provide a private cause of action. He says no private cause of action. Yes, I believe he did, Your Honor, because all... All the details of these testing, I realize, is just a tale. Right. And all the statute does is, if you comply with the provisions of the statute, it establishes a rebuttable presumption, and it allows the employer certain benefits, such as you don't have to pay unemployment benefits, you can sign up for trucking contracts with the state, and your insurance premiums are lowered. And there's no evidence in the record that the insurance premiums were lowered or that it had any contracts with the state. The only affirmative evidence is that the third advantage, namely you don't have to pay unemployment, was not taken advantage of by Thompson Creek. They paid unemployment. They did not contest his application for unemployment when they terminated him. Counsel, if I could ask a question, please. How do you answer your colleague's argument that, okay, it's voluntary, but once a company starts under it, it's no longer voluntary then? I think the answer to that, Your Honor, is, first of all, there's no case law saying that is the law as it applies to this statute. Thompson Creek adopted a drug testing policy. The drug testing policy, overall, may or may not have complied with the act. That was not in the record. But in this instance, it did not. Since it did not, it simply had a non-qualified drug testing policy, which was agreed to by an employee at will. And the drug testing policy would basically take away all the stuff related to the act. It said, if you test positive for the presence of drugs, we're going to have to terminate you because we're a mining company. And it's dangerous to have people out here who are on drugs. Their tires are as big as the ceiling on some of those tractors out there. And so you just take it as a common law employment practice and we're going to terminate you, Mr. Employee at will, if you test positive and you're going to have to undergo random tests. And he said, yes, I agree. I will do that. And he and others were chosen for a random test. No evidence that he was picked out in particular for any reason. And he tested positive and therefore they terminated him. Okay. Thank you. Thank you. Thank you. Any other questions? I think not. Thank you. Thank you. You've saved some time. Thank you. Real quickly, if the question ends at whether the statute is voluntary, we cannot then reconcile the act itself with its own terms. For example, I realize that I'm not supposed to be asking the questions, but I'll say it rhetorically because here's the problem. How can an act provide a course and even a cause of action, which they concede exists in 1711, by its own very terms, if in the end, the inquiry has to end at whether the act itself is voluntary? That would create an irreconcilable conundrum. And so the only way I believe that one can reconcile those two things is to then go back to the question, was there voluntary compliance? Was there a choice made? Which I think the district court recognized by its decision in saying and concluding and finding that Thompson Creek, in fact, did engage in certain acts that resulted in them being outside of the act. You know, I used to think that Congress was the only legislative body that would draft confusing or internally consistent statutes. I now realize that Idaho is capable of doing the same thing. Yes, they are. And I just think that the act cannot be read. It's impossible, and from my perspective, to read it. And I think you get it already. But it's impossible to read that act as simply saying it's voluntary. Therefore, it becomes meaningless because 1711, which they concede and the district court concedes, specifically provides a cause of action, at least under certain conditions. But the inconsistency is, I think, quite apparent in 72-1711, where there is a cause of action, although they say it in a backhanded way, if the employer's action based on a false result and the employer knew or should have known that it was an error. Okay, I got that. But the preface to that unless clause is, no cause of action arises in favor of any person against whom, unless. So the only exception that there is a cause of action is when the employer knew or should have known, and that part of the case comes up too late. And I'm not sure you could have shown it in any event, so don't feel too bad. Thank you. But the way I read that, I understand that that's one possible interpretation of that statute. But I think another possible interpretation is that within the confines of 1711 specifically, that the only way you can bring a cause of action under that section of the act is to find that they knew or should have known. But that is different from the 1706 that specifically says they shall reinstate them with back pay. And so I think that necessarily requires an act again. Although the very first clause or section says these are guidelines. Yes, they do. Thank you. Under a voluntary statute, here are the guidelines. Which I guess gets me to the point where Judge Gould asked the question, do they, you know, it looks like I'm no reason to believe they didn't. They got the tax benefits, the workers' comp benefits, all those benefits. You can't say they forwent those benefits. There's no information in the record to suggest they didn't get those benefits. And then to say they can both profit and avoid liability bothers me. There's no private cause of action. Thank you. Thank both sides for your time. We'll do one more case and then we'll take a break. The next case on the argument calendar is Bank of America versus Enright.
judges: W. Fletcher, Gould, N.R. Smith